**Noe D. LUJAN, Petitioner–Appellant,**

v.

**Robert J. TANSY, Respondent–Appellee.**

No. 92–2114.

United States Court of Appeals,
Tenth Circuit.

Aug. 11, 1993.

Tova Indritz, Federal Public Defender, Albuquerque, NM, for petitioner-appellant.

Margaret McLean, Asst. Atty. Gen. (Tom Udall, Atty. Gen., with her on the brief), Santa Fe, NM, for respondent-appellee.

Before McKAY, Chief Judge, WOOD,* and ANDERSON, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

Petitioner/Appellant Noe Lujan appeals from the denial of his petition for a writ of habeas corpus, asserting that his constitutional rights were violated by the refusal to give certain jury instructions and by the exclusion of certain testimony. We affirm.

---

* The Honorable Harlington Wood, Jr., Senior Judge, United States Court of Appeals for the

## BACKGROUND

The basic facts of this case are undisputed, and have been recounted in the published decision of the New Mexico Supreme Court affirming Lujan's conviction:

> The facts of the case are relatively simple. The defendant, after being taunted by his ex-wife, Cecilia, an hour earlier in the evening, returned to the location where he had last seen her and shot and killed her. Nearly an hour later, defendant appeared at the home of Joey Trujillo, a long-time acquaintance [and Cecilia's alleged lover], and shot and killed him. Lujan later surrendered to the police.

*State v. Lujan,* 94 N.M. 232, 608 P.2d 1114, 1115 (1980). Lujan was charged with two counts of first-degree murder.

Lujan's defense at trial was that, because of a progressive organic brain disorder (slight frontal cortical atrophy) in conjunction with a build-up of stress resulting from his divorce, Cecilia's alleged infidelity during her marriage to Lujan, and "worries about his children," he was rendered either legally insane at the time of the shootings, or at least incapable of forming the deliberate intent to take the life of another, which is required for a conviction of first-degree murder.

Lujan underwent a series of psychological and psychiatric tests in preparation for his trial, and a number of medical experts, as well as friends, family members and coworkers, testified at his trial about his mental condition. There was no dispute that he did indeed suffer from the progressive organic brain disorder. There was testimony "that he had difficulty controlling his emotions. There was conflicting evidence on whether Lujan could control himself or his emotions on the night of the crime." *Lujan,* 608 P.2d at 1115.

The New Mexico Supreme Court further recounted as follows:

> At one point, the defense called Ramona Santillanes, who in a tender of proof offered testimony that Cecilia had admitted to her, while still married to defendant,

Seventh Circuit, sitting by designation.

that she had become involved in an adulterous affair with Joey [Trujillo], and that the defendant knew about it. The court ruled that the testimony was irrelevant and was hearsay. Another witness, Rose Chavez, who was a health worker, offered testimony that Cecilia had contracted a venereal disease from someone other than defendant. The court ruled this testimony was irrelevant.

*Id.* Lujan was convicted on both counts of first-degree murder and sentenced to two consecutive life sentences.

In his direct appeal of his conviction to the New Mexico Supreme Court, Lujan argued four issues: (1) whether the court erred in refusing to admit the testimony of witnesses Chavez and Santillanes; (2) whether the court erred "in refusing to give a diminished capacity instruction based on an inability to form a deliberate intent;" (3) whether the court erred in refusing to instruct on the lesser included offenses of second-degree murder and voluntary manslaughter; and (4) whether the court erred in refusing to instruct on the consequences of a verdict of not guilty by reason of insanity. *Id.*, 608 P.2d at 1114–15.

The state supreme court affirmed his conviction, holding that the testimony of Santillanes and Chavez was properly excluded because it was "merely cumulative of evidence of defendant's emotional stress and its causes already presented by other witnesses." *Id.*, 608 P.2d at 1115. It further held that there was no error in the refusal to give the diminished capacity instructions, because New Mexico law only required those instructions "when the defendant is charged with willful and deliberate first-degree murder *and the evidence will support a finding of inability to form intent*" and "[t]here is evidence in the record that [Lujan] was able to form a deliberate intention, *with no evidence to the contrary.*" *Id.* (emphasis added).

With regard to the lesser-included offenses instruction issue, the court observed that Lujan never offered a second-degree murder instruction, "so the trial court did not err in failing to give the instruction" and that there was "no evidence that the homicide was committed either in the heat of passion or upon a sudden quarrel" so as to warrant the giving of a voluntary manslaughter instruction under New Mexico law. *Id.*, 608 P.2d at 1116. Finally, the court held that, under then-applicable New Mexico law, the jury need not be instructed on the consequences of rendering a verdict of not guilty by reason of insanity, so there was no error in not so instructing. *Id.*

Lujan then filed his first petition for a writ of habeas corpus in the United States District Court for the District of New Mexico, arguing that those same four trial errors violated his Fourteenth Amendment right to due process. The petition was dismissed on its merits, but on appeal to this court, the petition was remanded for exhaustion of state remedies, on the theory that the state courts had not yet been presented with the allegation that the four alleged trial court errors violated Lujan's *federal* constitutional rights.

Lujan proceeded to exhaust his state remedies, by filing: (1) a post-conviction motion *pro se* in the District Court of McKinley County, New Mexico, which was denied in April, 1985; (2) a counsel-assisted Petition for a Writ of Habeas Corpus in the District Court of Santa Fe County, New Mexico, in which he argued the same four issues he had raised in his first federal habeas petition, and which was dismissed without explanation in May, 1985; and (3) a Petition for a Writ of Certiorari to the New Mexico Supreme Court, which was dismissed without explanation in August, 1988.

Lujan finally returned to federal court with the present petition in November, 1989, arguing the same four issues he has pursued through direct appeal and state collateral proceedings. Thus, he argues error in the refusal to admit the Santillanes and Chavez testimony; error in the refusal to give deliberate intent instructions as part of the instructions on the defense of insanity; error in the refusal to give lesser-included offense instructions on second-degree murder and voluntary manslaughter; and error in refusing to instruct on the consequences of a verdict of not guilty by reason of insanity.

The magistrate judge to whom the petition was referred made findings and recommended dismissal of the petition, concluding that the exclusion of the Santillanes and Chavez testimony did not deny Lujan his due process rights; that the jury instruction issues were "matters of state law" and that the interpretation of the New Mexico Supreme Court of these state law matters was neither arbitrary nor discriminatory nor so "fundamentally unfair that the Petitioner was denied his right to a fair trial." The district court adopted the magistrate judge's proposed findings and recommendation and dismissed the petition.

### I. *Exclusion of Witness Testimony*

■ Lujan argues that the testimony of Santillanes and Chavez was critical to his defense because it would have provided the only evidence that he knew *in fact* that his wife was unfaithful to him, an issue which he asserts was "directly material to [his] defense that his acts were not murder, but voluntary manslaughter." Appellant's Brief in Chief at 34. He argues that evidence provided the foundation for his requested voluntary manslaughter instruction, and that the exclusion of that testimony therefore violated his Sixth Amendment right to present his defense and his Fourteenth Amendment right to due process and a fair trial.

■ In a habeas proceeding claiming a denial of due process, "we will not question the evidentiary or procedural rulings of the state court unless [the petitioner] can show that, because of the court's actions, his trial, as a whole, was rendered fundamentally unfair." *Tapia v. Tansy,* 926 F.2d 1554, 1557 (10th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 115, 116 L.Ed.2d 84 (1991); *see also Nichols v. Sullivan,* 867 F.2d 1250, 1253 (10th Cir.), *cert. denied,* 490 U.S. 1112, 109 S.Ct. 3169, 104 L.Ed.2d 1031 (1989). Underlying factual findings by the state court are accorded a presumption of correctness. 28 U.S.C. § 2254(d); *Tapia,* 926 F.2d at 1557; *Case v. Mondragon,* 887 F.2d 1388, 1392 (10th Cir.1989), *cert. denied,* 494 U.S. 1035, 110 S.Ct. 1490, 108 L.Ed.2d 626 (1990); *Hopkinson v. Shillinger,* 866 F.2d 1185, 1197 n. 7

(10th Cir.1989), *cert. denied,* 497 U.S. 1010, 110 S.Ct. 3256, 111 L.Ed.2d 765 (1990).

We hold that the exclusion of the testimony of Santillanes and Chavez did not render Lujan's trial so fundamentally unfair as to merit habeas relief. The New Mexico Supreme Court held that the proffered testimony was "merely cumulative" of other evidence. The magistrate judge below observed that "[t]he record was replete with testimony that Petitioner's wife had been unfaithful to Petitioner and the testimony of Ms. Santillanes and Ms. Chavez would have been cumulative." Lujan himself essentially concedes that the excluded testimony was only different in degree from other evidence presented, not different in kind:

> While there was other testimony that demonstrated Lujan *believed* his Cecilia was having sexual relations with other men, the excluded testimony was neither irrelevant nor cumulative, even on the issue of Cecilia's infidelity, because no other evidence so clearly established that fact.

Appellant's Reply Brief at 13 n. 2. Inasmuch as Lujan's defense was that he committed the crimes for which he was charged either while legally insane, in the "heat of passion" or at least without the ability to form a deliberate intent, his *belief* as to his wife's fidelity was what was at issue; additional evidence as to the *fact* of her infidelity would indeed be merely cumulative. Even if the excluded testimony more "clearly established" that fact, no fundamental unfairness occurred because, as Lujan concedes, other testimony placed the issue before the jury.

### II. *Refusal to Give Deliberate Intent Instructions*

■ At Lujan's trial, both the state and Lujan requested that the court give to the jury the New Mexico uniform jury instruction on insanity. The trial court refused to include in that instruction a sentence stating that even if the jury found Lujan sane, "you must still determine if he had the ability to form the deliberate intention to take away the life of another." As Lujan concedes and the New Mexico Supreme Court observed in affirming his conviction on direct appeal, this optional sentence "is to be used when the

defendant is charged with willful and deliberate first-degree murder and the evidence will support a finding of inability to form intent." *State v. Lujan,* 608 P.2d at 1115 (citing N.M.U.J.I.Crim. 41.00 Use Note 3). Thus, the existence of evidence supporting a finding of inability to form the requisite intent is crucial under state law, and the New Mexico Supreme Court held that "[t]here is evidence in the record that the defendant was able to form a deliberate intention, *with no evidence to the contrary.*" *Id.* (emphasis added).[1]

The trial court also refused to give another instruction on deliberate intention, which refusal the New Mexico Supreme Court held was not erroneous "because its use is contingent on the use of the optional sentence discussed above." *Id.,* 608 P.2d at 1116.

Lujan argues that the finding by the New Mexico Supreme Court that there was no evidence of Lujan's inability to form a deliberate intention is "clearly erroneous" and should be accorded no deference under 28 U.S.C. § 2254(d)(8). Additionally, Lujan argues that the New Mexico Supreme Court on direct appeal "ignored its own holding in *State v. Padilla,* 66 N.M. 289, 347 P.2d 312 (1959), that evidence that a defendant was suffering from a mental disease must be considered by the jury in determining whether the defendant could form the requisite intent in a first degree murder case." Appellant's Reply Brief at 2.

The result, Lujan argues, of the state court's erroneous finding as to the record in this case, and its misapplication of its own case law, is that his Fourteenth Amendment right to due process was violated because the trial court "effectively directed the verdict on the element of deliberate intent by not requiring the jury to consider his mental disease apart from its decision in insanity." *Id.* at 6.

As we have recognized before, a petitioner such as Lujan bears a "great burden ... when ... [he] seeks to collaterally attack a state court judgment based on an erroneous jury instruction." *Hunter v. State,* 916 F.2d 595, 598 (10th Cir.), *cert. denied,* —— U.S.

——, 111 S.Ct. 1693, 114 L.Ed.2d 87 (1991). " '[H]abeas proceedings may not be used to set aside a state conviction on the basis of erroneous jury instructions unless the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial in the constitutional sense.' " *Shafer v. Stratton,* 906 F.2d 506, 508 (10th Cir.) (quoting *Brinlee v. Crisp,* 608 F.2d 839, 854 (10th Cir.1979), *cert. denied,* 444 U.S. 1047, 100 S.Ct. 737, 62 L.Ed.2d 733 (1980)), *cert. denied,* 498 U.S. 961, 111 S.Ct. 393, 112 L.Ed.2d 402 (1990). *See also Estelle v. McGuire,* —— U.S. ——, ——, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991) (" '[F]ederal habeas corpus relief does not lie for errors of state law'.... [I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions."). We find no such fundamental unfairness here.

First, despite Lujan's vehement protestation that the New Mexico Supreme Court erred when it concluded that there was "no evidence" that Lujan was unable to form a deliberate intention, that state court finding is entitled to the presumption of correctness required by 28 U.S.C. § 2254(d). "Explicit and implicit findings by state trial and appellate courts 'shall be presumed to be correct' unless one of seven factors listed in section 2254(d) are present or the federal court concludes that the state court findings are not fairly supported by the record." *Case v. Mondragon,* 887 F.2d 1388, 1392 (10th Cir. 1989) (quoting 28 U.S.C. § 2254(d)), *cert. denied,* 494 U.S. 1035, 110 S.Ct. 1490, 108 L.Ed.2d 626 (1990).

Lujan asserts that the New Mexico Supreme Court in making that finding "ignored evidence of the surrounding circumstances, such as testimony of specific instances of [Lujan's] 'blanking out,' his amnesia, and his extreme shifts in attitude and personality shortly before the time of his arrest, as well as other expert testimony that he was unable to stop himself from doing what he did." Appellant's Reply Brief at 2. Those assertions do not undermine the state court's find-

---

1. In reaching that conclusion, the court distinguished between Lujan's inability to control his emotions, about which there was ample evidence in this case, and the inability to form a deliberate intention.

ing that the record contained no evidence that Lujan was unable to form a deliberate intention to take the life of another. Indeed, the state supreme court carefully distinguished between evidence showing an inability to control his emotions and evidence showing a lack of the ability to form a deliberate intention. Nothing Lujan cites to us convinces us that the New Mexico Supreme Court erred in its application of that distinction to the record in this case. In short, we refuse to effectively overturn the New Mexico Supreme Court's finding after its own careful review of the record.

■ Second, Lujan argues the state supreme court misinterpreted and/or ignored its own state law. "We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.' " *Estelle v. McGuire*, — U.S. ——, ——, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 3102, 111 L.Ed.2d 606 (1990)). "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions." *Id.* Rather, "[t]he only question for us is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.' " *Id.*, — U.S. at ——, 112 S.Ct. at 482 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973)). We hold that the alleged instructional errors here did not.

The crux of Lujan's argument is that the failure to give his requested instructions caused the jury to fail to focus on the necessity of finding beyond a reasonable doubt that he had the deliberate intention to take the life of another. We do not believe it had that effect. Indeed, the jury in this case was given an explicit instruction defining the deliberate intent required for guilt under a first-degree murder charge in New Mexico:

A deliberate intention refers to the state of mind of the defendant. A deliberate intention may be inferred from all the facts and circumstances of the killing. The word deliberate means arrived at or determined upon as a result of careful thought and the weighing of the consideration for and against the proposed course of action. A calculated judgment and decision may be arrived at in a short period of time. A mere unconsidered and rash impulse, even though[ ] it includes an intent to kill, is not a deliberate intention to kill. To constitute a deliberate killing, the slayer must weigh and consider the question of killing and his reasons for and against such a choice.

R. Vol. I tab 16 at 2. The jury can hardly have ignored its responsibility to make a determination as to Lujan's ability to form such a deliberate intention. No fundamental unfairness arose from the failure to instruct precisely as Lujan requested.

### III. *Lesser-included Offense Instructions*

■ Lujan next argues his Fourteenth Amendment rights to due process and a fair trial were violated when the trial court refused to instruct the jury on the lesser-included offense of voluntary manslaughter.[2] As Lujan concedes, this circuit has agreed with a majority of those circuits addressing the issue and held that a petitioner in a non-capital case is not entitled to habeas relief for the failure to give a lesser-included offense instruction "even if in our view there was sufficient evidence to warrant the giving of an instruction on a lesser included offense." *Chavez v. Kerby*, 848 F.2d 1101, 1103 (10th Cir.1988); *see also Pitts v. Lockhart*, 911 F.2d 109, 112 (8th Cir.1990) ("A majority of the circuits considering this difficult issue have held that the failure of a state court to instruct on a lesser included offense in a noncapital case never raises a federal constitutional question.") (citing *Valles v. Lynaugh*, 835 F.2d 126, 127 (5th Cir.1988); *Perry v.*

---

**2.** Lujan has also argued that his due process rights were violated by the failure to give a second-degree murder instruction. However, he failed to request such an instruction at trial, and the New Mexico Supreme court on direct appeal held that claim procedurally barred because of that failure. *See State v. Lujan*, 608 P.2d at 1116 ("The defendant did not tender an instruction on

second-degree murder, so the trial court did not err in failing to give the instruction."). Lujan has made no effort to show cause for that procedural default, *Coleman v. Thompson*, — U.S. ——, ——, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991), and appears to have dropped the issue in his Reply Brief.

*Smith,* 810 F.2d 1078 (11th Cir.1987); *James v. Reese,* 546 F.2d 325 (9th Cir.1976); *Bagby v. Sowders,* 894 F.2d 792 (6th Cir.), *cert. denied,* 496 U.S. 929, 110 S.Ct. 2626, 110 L.Ed.2d 646 (1990)), *cert. denied,* — U.S. ——, 111 S.Ct. 2896, 115 L.Ed.2d 1060 (1991).[3] Lujan asks us to reconsider this rule en banc. This panel, of course, is in no position to grant that request. *See United States v. Walling,* 936 F.2d 469, 472 (10th Cir.1991).

**IV.** *Refusal to Instruct on Consequences of Insanity Verdict*

■ Finally, Lujan argues that his Fourteenth Amendment rights to due process and a fair trial were violated when the trial court failed to instruct the jury on the consequences of rendering a verdict of not guilty by reason of insanity. At the time of Lujan's trial, no such instruction was required under New Mexico law.[4] In his direct appeal to the New Mexico Supreme Court, Lujan argued that the court ought to reconsider that rule, established in *State v. Chambers,* 84 N.M. 309, 502 P.2d 999 (1972). The state court declined to do so, stating:

> We do not believe that the change in the law requested by defendant would be proper. The jury is not to concern themselves with the consequences of their verdict.

*State v. Lujan,* 608 P.2d at 1116.

As we have indicated, habeas relief is not available for errors of state law. *Estelle v. McGuire,* — U.S. at ——, 112 S.Ct. at 480. Rather, the issue is "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Id.* at ——, 112 S.Ct. at 482 (quoting *Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973)). We find no such due process violation.[5]

### CONCLUSION

For the foregoing reasons, Lujan's petition for a certificate of probable cause is GRANTED. The district court's denial of Lujan's petition for a writ of habeas corpus is AFFIRMED.

---

3. Additionally, the New Mexico Supreme court concluded that there was in fact no evidence supporting the giving of a voluntary manslaughter conviction. That finding is entitled to a presumption of correctness under 28 U.S.C. § 2254(d). *See Case v. Mondragon,* 887 F.2d at 1388.

4. The jury received the instruction: "You must not concern yourself with the consequences of the verdict." R. Vol. I tab 16 at 8. Lujan tendered the following instruction, the second sentence of which was rejected: "You must not concern yourself with the consequences of your verdict. If you should find the Defendant not guilty by reason of insanity, further proceedings in the case will be handled by the Judge." *Id.* That second sentence was deleted from the New Mexico Uniform Criminal Jury Instructions in response to the New Mexico Supreme Court's

decision in *State v. Chambers,* 84 N.M. 309, 502 P.2d 999 (1972), in which the court held that the jury need not be instructed on the consequences of a verdict of not guilty by reason of insanity.

5. Lujan argues the failure to instruct was particularly egregious because a prospective juror, later removed from the panel, expressed concern in front of the entire venire during voir dire that if Lujan were found not guilty by reason of insanity, he would be released, posing great danger to the community. The trial court responded to this concern by telling the juror, without elaboration and in the presence of the entire venire, that what happened to Lujan after the jury rendered its verdict was "none of your business." Appellant's Brief-in-Chief at 29. That incident does not, in our view, elevate the alleged instructional error to one of constitutional dimension.